RECEIVED

FEB 2 2 2019

RICHARD W. NAGEL, CLERK
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

OLIVER RANDY,

  Plaintiff, Pro Se,

v.

DAVID GRAY, Warden,

MARY POTTER, Deputy Warden, SS,

TRISH BOSLEY, Correctional Officer,

JEFFREY A. BURGER, CHAPLIN,

SUNNI, IMAM, (AKA) Religious Service

   Defendant's. et, al;
 In Individual and official Capacity

CASE NO. 2:19 cv 619

DEPT NO.:

HONORABLE JUDGE   Judge Marbley ,

  MAGISTRATE JUDGE JOLSON

**COMPLAINT**
1983-1331, 1343(A)(3); 28 U.S.C.
SECTION 2201, 2202, 2283, 2284
AND RULE 65 of THE FEDERAL
RULES OF CIVIL PROCEDURE
Violation of Religious Rights

## JURISDICTION

1.   This is a Civil action authorized by 42 U.S.C.; Section 1983 to redress the deprivation,

Under the Color of Law, of rights secured by The United States.

2.   This Honorable Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(A)(3).

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.

3.   Plaintiff claims for injunction relief are Authorized by 28 U.S.C. Section 2283 and 2284

And; Rule 65 of The Federal Rules of Civil Procedure. Not only that; upon information and

belief he believes he **is** entitled to redress. "Since"; he believes the Defendant's acted with

deliberate indifference against the U.S. Constitution and doing so he believes his Constitutional

rights is-still being violated.

4.  This United States District Court of Ohio has jurisdiction and is the appropriate Venue Under 28 U.S.C. section 139(B) (2); Since this is where the violations Plaintiff believes was violated, and happened at.

### Plaintiff :

5.  Plaintiff, Oliver Randy, is and was at all times mentioned herein a prisoner of the State of Ohio department and Corrections at Belmont Correctional Institution in St. Clairsville, Ohio.

## Defendants:

6.  David Gray, is the supervisor of all defendants, he is responsible for the defendant's to follow all The Ohio Department of Corrections codes and regulations, and policy's.

7.  Mrs. Potter, Deputy Warden, SS; she is the supervisor in special service programing in which she Controls who is on the list for Islamic practices, and who can attend Rahmadan services. She is one of the individual's who denied plaintiff to practice his Islamic faith.

8.  Dr. Jeffrey A. Burger, is the Institution Chaplin, he controls all religious services. He is one of the individuals who also refuses plaintiff to practice his Islamic faith.

9.  Officer Bosley, is the Correctional officer in the prison. She placed Plaintiff in segregation for trying to protect his interest to exercise his Islamic faith.

10. Mr. Sunni, is the Imam for the institution Islamic services. He is a responsible for not doing his duty to place Plaintiff on the inmate Islamic list to practice his Islamic faith. He also

mis-handled the paper work properly to place Plaintiff on the Islamic list. He also lied and said plaintiff was already on the Islamic list.

## Exhaustion and FACTUAL ALLEGATIONS COMMON TO ALL CAUSE OF ACTION:

11.  Plaintiff has used the full  prison grievance procedure that is available to try to and resolute the complaint herein and after stated.

12.  The grievance date's  is attached and marked as exhibit (A); these dates are:

5/21/2018; 5/22/2018; 6/1/2018; 6/4/2018; 7/3/2018.

13.  Plaintiff had no resolution trying to resolve his issues/complaint, and so plaintiff now file this suit against all defendants in this District Court.


## GENERAL ALLEGATIONS

14.  Plaintiff submits that the defendants has deprived him all means to practice his religion.

15.  Plaintiff states upon information and belief that all defendants is not allowing him to study, pray, or have any affiliation to his Muslim faith.

16.  Plaintiff states that he successfully presented his case in grievance that is attached as marked as Exhibit (A). In that Grievance he stated that Defendants does not allow him to practice his faith, and is ignoring his rights to do so.

17.  Plaintiff re-allege and incorporate by reference all above and what is stated in marked exhibit (A).

18.  Plaintiff believes upon information and belief; that defendants tactic and abusive actions violated fundamental fairness in depriving his Constitutional right to practice his religion.

19.  Plaintiff also state upon information and belief; that by those actions of defendants it

violates the laws of the United States Constitution Equal Protection Rights.

20. Plaintiff believes upon information and belief that the violation of his right to practice his religion violates the 1st, 4th, 5th, 6th, 8th, 14th, Amendments to his guaranteed Constitutional Rights, and Article I Section 10, 11, 12, 14, 16 of The Ohio Constitution.

21. Plaintiff states upon information and belief that the on going tactics deprive his everyday right to practice his religion.

22. Plaintiff states upon information and belief that the defendants acted and is acting in malic and against the stated Constitutional rights guaranteed by Congress of the United States of America.

23. Plaintiff states upon information and belief, that any person who acts under the color of statue of law to violate another's Constitutional rights, has the responsibilities for damages and a suit to defend his constitutional rights, that have been wronged or injury, Separate from criminal law, Because, Plaintiff claims such above and after, Plaintiff believes upon information and belief that The Bill of Rights protect all people against such stated acts.

24. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.

25. Plaintiff has been and will continue to be irreparably injured by the defendant's conduct, unless this Honorable Court grants the declaratory and injunction relief which plaintiff seeks.

26. Plaintiff states the Institution AR-Institutional Religious Services Rule Code ORC 2317.o2; AR 5120-9-44 Related ACA Standards: 4-4512 to 4-4517, 4-4520, 4-452; 2 Co-5E-01, 2 CO-5E-02; number: 72-REG-01; SUPERSEDES: 72-REG-)! Dated 1/05/15; effective date: February 5th, 2017, "also" "See" Number 72-REG-12, SUPERSEDES 71-REG-12 dated

1/03/11. This is marked as Exhibit (B) and is attached that supports plaintiff claim and such said violations.

26. Plaintiff also claim upon information and belief that this suit is also based on causation because he believes upon the information provided that the defendants personally violated his Constitutional Rights and that the defendant's violated The AR-of 51-29-09 In Appropriate Supervision. "See" attached Exhibit marked as Exhibit (C).

## **PRAYER FOR RELIEF**

27. A declaration that acts and omissions described herein, defendant's violated Plaintiff "Constitution Rights".

28. A preliminary and permanent ordering Defendant's et al, to allow plaintiff to pray, study And exercise other benefits he can practice, such as; his Islamic religion.

29. Because personal involvement is well seen, Plaintiff request Nominal, damages against the defendants in there official and individual capacity. In amount of $50.00 - $100.00; (Fifty dollars to One Hundred dollars).

30. Since plaintiff claims upon information and belief, he asks for $20,000 (twenty thousand dollars) for punitive damages, since, defendant's is motivated by evil intent" or involved "reckless" or callous indifference to plaintiffs rights. This against defendants and claimed in there official and individual capacity.

31. Defendant asks for $20,000 (twenty thousand dollars) for compensatory damages.

32. Jury demand on all issues.

33. Plaintiff cost for suit be paid by defendants,

34. Any additional relief this Honorable Court deems just, proper and equitable.

Respectfully submitted,

Randy Oliver #A702-195
MANSField CORRECTioNAl INSTiTUTiON
P.O. Box 788
MANSField OHiO 44901-0788

## VERIFICATION

I have read the forgoing complaint and hereby verify the matters alleged therein are true,

except as to matters on information and belief, and those, I believe them to be true.

I certify under the penalty of perjury that the forgoing is true and correct so help me GOD.

Respectfully submitted,

Randy Oliver #A702-195
MANSField CORRECTioNAl INSTiTUTiON
P.O. BOX 788
MANSField OHiO 44901-0788

Executed on this 8th day of FEBRUARY IN, MANSField CORRECTioNAl iNSTiTUTiON

Respectfully submitted,

Randy Oliver #A702-195
MANSField CORRECTioNAl INSTiTUTiON
P.O. BOX 788
MANSField OHiO 44901-0788

Sworn in the Presence of a notary public on this 8th day of February 2019



_Ciani B_

Signature of Notary Public

CIANI C. BISHOP
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
July 20, 2021

## CERTIFICATE OF SERVICE

I hereby state that the forgoing complaint against:

1) David Gray, Warden, P.O. Box 540 St. Clairsville, Ohio 43950

2) Mary Potter, Deputy Warden, SS, P.O. Box 540 St. Clairsville, Ohio 43950

3) Trish Bosley , Correctional Officer, P.O. Box 540 St. Clairsville, Ohio 43950

4) Jeffery Burger, Chaplin, P.O. Box 540 St. Clairsville, Ohio 43950

5) Sunni Imam, (AKA) Religious Service, P.O. Box 540 St. Clairsville, Ohio 43950

Was placed in the prison mail box on this Feb day of 15th 2019 and sent to all parties

Involved in this instant complete. VIA United States District Court of Ohio for the Southern

District of Ohio Eastern Division, Federal Building Court House, 85 Marconi Blvd. Rm. 121;

Columbus and that all copy's was sent in the guidelines of the court.

Respectfully submitted,

Randy Oliver #A702-195
MANSField CORRECTIONAL INSTITUTION
P.O. BOX 788
MANSField OHio 44901-0788

$2:19\,cv\,619$

Declaration in support of Complaint

Judge Marbley.

MAGISTRATE JUDGE JOLSON

This is a pro se complaint and, as such, it is held to less stringent standards than those drafted by attorneys. "See" **Cruz v. Beto**, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); **Haines v. Kerner**, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). **The allegations in a pro se complaint must be taken as true and construed in favor of the plaintiff.** "See" **Malone v. Colyer**, 710 F.2d 258, 260 (6th Cir. 1983).

Plaintiff states a reviewing court cannot add material to the record and then decide the matter on the basis of the new material. Id., "citing" **State v. Ishmail, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978).**  Therefore plaintiff direct this court to his exhibits set with the complaint.

While it is undisputed that plaintiff tried to notify and state his religion practice, he also claimed that the prison officials impeded his First Amendment right to freely exercise his religion rights. "See" **Kay v. Bemis** (2007, CA10 Utah) 500 F3d 1214.  And state there is no excuse for this deliberate motive of actions.

All of the plaintiff request to practice his religion defer by each defendant reason to not let him practice his Islamic faith. "See" Attached Exhibit (A) in complaint.  Court's have held: that, to state a claim pursuant to 42 U.S.C.S. § 1983, the inmate had to allege that some person has deprived him of a federal right, and that the person who deprived him of that right acted under color of state law. This court must "Respectfully" stated) concluded that the defendant's are not performing there ministerial duties to provide inmate to right of religion.

To this extent, all defendant's are in violation of plaintiffs First Amendment right., and plaintiff states; when viewing the evidence in a light most favorable to the prisoner, the evidence

is sufficient to form a basis on which a reasonable jury could find that the defendant's decision to bar the inmate from practicing his religion is a fact based on Constitutional violations. "See" Exhibit (A), (B), and (C) in plaintiffs complaint.

Respectfully submitted,

Randy Oliver #A702-195
MANSFieLd Correctional Institution
P.O. Box 788
MANSFieLd , Ohio 44901-0788

## CERTIFICATE OF SERVICE

I hereby state that the forgoing **Declaration in support of Complaint** against:

1) David Gray, Warden, P.O. Box 540 St. Clairsville, Ohio 43950

2) Mary Potter, Deputy Warden, SS,  P.O. Box 540 St. Clairsville, Ohio 43950

3) Trish Bosley, Correctional Officer,  P.O. Box 540 St. Clairsville, Ohio 43950

4) Jeffery Burger, Chaplin, P.O. Box 540 St. Clairsville, Ohio 43950

5) Sunni Imam, (AKA) Religious Service, P.O. Box 540 St. Clairsville, Ohio 43950

Was placed in the prison mail box on this Feb day of 15th 2019 and sent to all parties in this instant complete. VIA United States District Court of Ohio for the Southern District of Ohio Eastern Division, Federal Building Court House, 85 Marconi Blvd. Rm. 121; Columbus and that all copy's was sent in the guidelines of the court.

Respectfully submitted,

Randy Oliver #A702-195
MANSFieLd Correctional Institution
P.O. Box 788
MANSFieLd , Ohio 44901-0788

STATE OF OHIO



DEPARTMENT OF REHABILITATION
AND CORRECTION

| SUBJECT:<br>**Muslim Religious Practices** | PAGE ___1___ OF ___4___ |
| | NUMBER: 72-REG-12 |
| RULE/CODE REFERENCE: | SUPERSEDES:<br>71-REG-12 dated 01/03/11 |
| RELATED ACA STANDARDS: | EFFECTIVE DATE:<br>December 26, 2012 |
| | APPROVED: |

## I. AUTHORITY

This policy is issued in compliance with Ohio Revised Code 5120.01 which delegates to the Director of the Department of Rehabilitation and Correction the authority to manage and direct the total operations of the Department and to establish such rules and regulations as the Director prescribes.

## II. PURPOSE

The purpose of this policy is to provide information and guidance to chaplains, administrators, and staff in managing and providing for the religious activities and practices of inmates in the custody of the Department. This policy is intended to be permissive rather than restrictive. The observances and religious items listed are generally approved accommodations for qualified inmates wishing to practice the subject faith. Additional observances or practices may be permitted pursuant to Department Policy 72-REG-02, Religious Accommodations.

## III. APPLICABILITY

The policy applies to employees, independent contractors, and volunteers of the Department who provide or assist in providing religious services.

## IV. DEFINITIONS

English translations and transliterations of Arabic words and phrases have been included in alphabetical order for quick reference.

**Eid** - There are two great festivals of profound significance for all Muslims. Both go under the name 'Eid, which means a recurring happiness; both are connected with the performance of duty in the service of Allah.

**Holy Qur'an** - Central religious text of Islam.

**Imam** - The one who leads the prayer.

DRC 1361 (Rev. 04/08)

| SUBJECT: Muslim Religious Practices | PAGE __2__ OF __4__ |
| --- | --- |

**Jumah** - The obligatory congregational prayer on Friday between 12:30-3:00pm.

**Kufi** - A Muslim man's head covering.

**Miswak** - A wooden tooth cleaner.

**Taleem** - Religious education or studies.

## V.    POLICY

It is the policy of the Ohio Department of Rehabilitation and Correction (DRC) that inmates, who wish to do so, may subscribe to any religious belief they choose. Inmate religious practices, as opposed to belief, may be subject to reasonable time, place, and manner restrictions. Inmate participation in religious activities shall be voluntary. The opportunity for inmates to engage in particular religious practices shall be subject to the legitimate Departmental or institutional interests and concerns, including security, safety, health, discipline, rehabilitation, order, and the limitations of and allocation of resources.

## VI.   PROCEDURES

A.    Congregate Worship: DRC has two regularly scheduled congregate services or activities.

    1.    Jumah: The congregational prayer on Friday between 12:30-3:00 pm.

    2.    Taleem: Religious education or studies.

B.    For purposes of this policy, determination of an inmate's standing, or membership as a practitioner of the Islamic faith shall be made either by the Imam providing religious services for the institution housing that individual or by an Imam consulted by the Religious Services Administrator.

C.    Individual Worship Practices

    Individual prayer is permissible. Given the flexibility of institutional schedules, Muslim inmates should already have sufficient opportunity to pray during their normal schedules without the need for disruption or special accommodation.

D.    Diet

    The diet will be free of all pork and products containing or derived from pork. The institution will provide nutritionally adequate meat and non-meat alternatives.

E.    Holidays or Special Observances: The principal holiday observances are the Ramadan fast and the Eid feasts.

1. Ramadan: The fast is obligatory on the Muslim who can do it without physical or mental hardship to them. The month of Ramadan can have 29 or 30 days, depending on the actual sighting of the crescents of the new moon. The Department will receive the beginning date from the Islamic Society of North America (ISNA). The fast is broken daily at sun set.

   a. Inmates observing Ramadan will fast and take no meals during the day between sunrise and sunset, during period of religious observance.  Inmates observing Ramadan will be provided with two meals per day; one in the morning to be eaten before the day's fast begins and one in the evening at end of the day's fast.  These meals may be prepared "brown bag" meals and together they shall have sufficient caloric nutritional level to meet daily department dietary standards.

   b. When led by an authorized religious leader, inmates observing Ramadan will be given an opportunity for congregate evening prayer in the designated area (chapel) in the evening on each day of Ramadan.

   c. While discreet personal prayers at the table are permitted, prayers involving kneeling, audible chanting, or group activity are not permitted in the dining hall during meal time.

   d. Inmates participating in Ramadan shall continue their normal work assignments and institution programs. No additional privileges, limitations or restrictions shall be placed on them during Ramadan, other than allowing observance of the special requirements for the taking of their meals.

   e. Muslim inmates, in special housing units during Ramadan and who wish to fast, may be fed in their cells with appropriate meals before dawn and after sunset.

   f. The Muslim Religious Service Provider will be the only person to add or delete a Muslim inmate from the fast list. However, if a Muslim inmate does not pick up the brown bag breakfast for three consecutive nights or eats in the dining hall during the period of fasting,  s/he will be suspended from further participation in the fast unless or until re-instated by the chaplain on the recommendation of the Muslim Religious Service Provider.

2. Eid:  The Eid-ul-adha meal(s) are to be served in the dining hall after the normal lunch time feeding of the inmate population. The meal is limited to those inmates who were approved to participate in the fast and who attended the prayer service that morning.

F. Holy Book: The primary holy book is the Holy Qur'an.

G. Medical:  There are no specific medical treatment requirements for the Muslim religion.

H. Work Proscriptions: No specific work proscriptions are noted.

I. Religious Property

   The following property has been generally approved and may be obtained from an approved vendor:

   1. A white or beige kufi.

2.  Oils (non-alcohol) purchased from an approved vendor if not available in the commissary. The inmate possession limit is no more than 1 oz. at any given time.

3.  Dhikr beads may be possessed in one's hand, but not worn or displayed. They are to be a little larger than a navy bean, plastic or wood only with a 33 count.

4.  Wooden tooth cleaner (miswak) is not to be any longer than 6 inches and no thicker than a pencil. The Muslim inmate is permitted six-sticks.

5.  The inmate will be permitted to possess and wear a white mid-thigh shirt; black is not permitted. They may wear the shirt within their living unit and during religious services, but not in general areas of he institution.

6.  The inmate will be permitted to possess a prayer rug for use in his living quarters during scheduled services and on the yard. The size of the prayer rug shall measure no more than 2 feet 4 inches in width and 4 feet in length. It may be multicolored (no color restriction) or it may be solid colored. Solid colors of blue and red are not permitted.

7.  Headscarves for Muslim women may be worn and will meet the following measurements: 34 1/2 inches x 34 1/2 inches x 48 3/4inches and must be white or beige in color. Inmates may have no more than three headscarves.

J.  Grooming: No specific requirements are noted.

K.  Religious Leaders

Any congregate services must be led or supervised by approved religious leaders including either outside volunteers, independent contractors, or employees of DRC. There are to be no inmate led groups.

L.  Death and Burial

If a Muslim inmate dies and no family member claims the body, Islamic practice is to complete the burial ceremony as soon as possible. Traditionally the body is washed and shrouded in three white seamless sheets. The funeral service (the body need not be there) consists of a prayer led by the Muslim Religious Service Provider. An autopsy may be performed as necessary or otherwise required by law. Cremation is not consistent with Muslim beliefs.

| STATE OF OHIO | SUBJECT:<br>**Native American Religious Policy** | PAGE __1__ OF __4__ |
| | | NUMBER: 72-REG-13 |
| | RULE/CODE REFERENCE: | SUPERSEDES:<br>72-REG-13 dated 01/03/11 |
| | RELATED ACA STANDARDS: | EFFECTIVE DATE:<br>January 23, 2012 |
| DEPARTMENT OF REHABILITATION<br>AND CORRECTION | | APPROVED: |

## I.  AUTHORITY

This policy is issued in compliance with Ohio Revised Code 5120.01 which delegates to the Director of the Department of Rehabilitation and Correction the authority to manage and direct the total operations of the Department and to establish such rules and regulations as the Director prescribes.

## II.  PURPOSE

The purpose of this policy is to provide information and guidance to chaplains, administrators, and staff in managing and providing for the religious activities and practices of inmates in the custody of the Department. This policy is intended to be permissive rather than restrictive. The observances and religious items listed are generally approved accommodations for qualified inmates wishing to practice the subject faith. Additional observances or practices may be permitted pursuant to Department Policy, 72-REG-02, Religious Accommodations.

## III.  APPLICABILITY

This policy applies to employees, independent contractors, and volunteers of the Department who provide or assist in providing religious services.

## IV.  DEFINITIONS

**Bundle Cloth** - Cloth or bag used by Native Americans to store, protect, and transport personal religious items.

**Headband** - Native American religious headgear.

**Medicine Bag** - A religious bag used by Native Americans to carry sacred items.

**Prayer Pipe** – A prayer pipe used by a Native Americans for religious purposes.

**Sacred Items** - Natural objects such as stones, shells, feathers, bones, claws, animal teeth, or something of personal spiritual significance to the individual that is placed in the medicine bag.

DRC 1361 (Rev. 04/08)

| SUBJECT: Native American Religious Policy | PAGE___2___ OF ___4___ |
|---|---|

<u>**Smudge Pot**</u> - Small clay pot or seashell used by Native Americans for the smudging ceremony which consists of the burning of Kinni-Kinnick for a cleansing ritual with the smoke.

<u>**Sage, Sweet Grass, and Cedar**</u> – Herbs and aromatics used by Native Americans in religious ceremonies.

## V.  POLICY

It is the policy of the Ohio Department of Rehabilitation and Correction (DRC) that inmates, who wish to do so, may subscribe to any religious belief they choose. Inmate religious practices, as opposed to belief, may be subject to reasonable time, place, and manner restrictions. Inmate participation in religious activities shall be voluntary. The opportunity for inmates to engage in particular religious practices shall be subject to the legitimate Departmental or the institutional interests and concerns, including security, safety, health, discipline, rehabilitation, order and health, discipline, rehabilitation, order and the limitations of and allocation of resources.

## VI.  PROCEDURES

A.  Congregate Services

Congregate services for inmates who are identified as practitioners of Native American religion, shall be led by persons who are properly credentialed or recognized as Native American spiritual leaders by a Native American council, tribal body, or similar organization. This person must also be approved by DRC.

1. The Pipe Ceremony: The pipe ceremony involves the use of the prayer pipe and is an important religious activity for Native Americans. This must be led by an outside and approved spiritual leader. This is to take place in a designated area outside. The pipe and any objects used with it may be smudged before the actual pipe ceremony.

2. The leader may bring in a sacred pipe and enough smoking mixture for use in the ceremony. Any smoking mixture not consumed during the ceremony must be removed from the institution by the spiritual leader. All cost for the smoking mixture is the cost of the spiritual leader and/or inmate.

3. Pipe ceremonies may be held at least once per month, but may be held more frequently.

B.  Individual Worship Practice

1. Smudging: The individual desiring to smudge is only permitted to use material approved for that purpose, such as sweet grass, cedar, or sage, etc. Once lit, the material is allowed to smolder and the smoke is drawn toward the heart and over the head to receive its blessing. After the smudging takes place, the smoke is offered to the four directions. Smudging is to take place at least one time per week in a designated area outside at least twenty feet away from the building. All costs for smudging items are the cost of the spiritual leader and/or inmate.

| SUBJECT: Native American Religious Policy | PAGE __3__ OF __4__ |
|---|---|

2.   Personal Prayers - These prayers may involve the use of smoke from herbs or other aromatics and may be accomplished only in a designated area outdoors. Although this is individual, not corporate activity, more than one person may use the designated area for individual prayers in the presence of other individuals doing the same so long as they are not coordinating their activities or engaging in corporate worship. This may be done during the time allotted for smudging.

3.   Prayers that involve smoke or that must be done outside are subject to reasonable time, place, and manner restrictions and scheduling requirements. This does not restrict personal prayer that does not require such scheduling considerations and may be accomplished in the inmates living area.

4.   Medicine Bag - Native American practitioners may wear a medicine bag on a cord thong around their neck. The medicine bag shall be no larger than a 2"x 2" square and may contain up to three sacred objects.

C.   Dietary Requirements

There are no dietary restrictions.

D.   Holy Days

There is no set calendar of holidays or holiday observances.

E.   Holy Book(s)

Native Americans do not have a holy book.

F.   Authorized Religious Items

1.   Medicine Bag
   a.   It may be made of cloth, but not fur.
   b.   Its dimensions when laid flat are not to exceed a 2 inch by 2 inch square. And shall not be more than ½ inch in thickness.
   c.   When directed by an employee, the inmate shall show the contents of the medicine bag.
   d.   The medicine bag is to be worn around the neck on a string of cloth.
   e.   The medicine bag may contain up to 3 sacred objects.
   f.   The medicine bag must be ordered from an approved vendor.

2.   Smudge Pot
   a.   This is a small clay pot or seashell that can be held in the palm of one's hand.
   b.   The smudge pot is to be used for individual prayers and ceremonies.
   c.   Sage, sweet grass, or cedar is authorized to be burned in the smudge pot.
   d.   The individual smudge pot must be ordered from an approved vendor.

3.   Headband
   a.   Headbands may be cloth, but cannot be beaded.

DRC 1362

| SUBJECT: Native American Religious Policy | PAGE 4 OF 4 |
|---|---|

    b. Native Americans may possess one (1) headband.

    c. The ends of the headband that protrude from the knot may not exceed 3 inches in length.

    d. Headbands must be ordered from an approved vendor. Bandannas are not accepted as headbands.

    e. Headbands may be worn during congregate worship ceremonies and in the housing units.

    f. Headbands must be white or beige.

4.     Bundle Cloth

    a. This is a cloth or bag that is used to store or wrap the sacred items when not in use.

    b. Inmates are required to show the contents of the bundle cloth or bag upon direction of a staff member.

5.     The ritual herbal items of sage, sweet grass, and cedar, for use in smudging rituals. The inmate may possess no more than one 4 oz. package of this material at any time.

G.     Medical treatment: There are no medical restrictions.

H.     Burial Rituals: Practice varies from tribe to tribe.

DRC 1362

| SUBJECT:<br>**Institutional Religious Services** | | PAGE ___1___ OF ___7___ | |
| --- | --- | --- | --- |
| | | NUMBER: **72-REG-01** | |
| RULE/CODE REFERENCE:<br>ORC 2317.02; AR 5120-9-44 | | SUPERSEDES:<br>72-REG-01 dated 01/05/15 | |
| RELATED ACA STANDARDS:<br>4-4512 to 4-4517, 4-4520, 4-4521;<br>2-CO-5E-01, 2-CO-5E-02 | | EFFECTIVE DATE:<br>**February 5, 2017** | |
| | | APPROVED: | |

**Ohio** | Department of
Rehabilitation & Correction

## I.   AUTHORITY

This policy is issued in compliance with Ohio Revised Code 5120.01 which delegates to the Director of the Department of Rehabilitation and Correction the authority to manage and direct the total operations of the Department and to establish such rules and regulations as the Director prescribes.

## II.   PURPOSE

The purpose of this policy is to provide guidance to the operation of institutional religious services.

## III.   APPLICABILITY

The policy applies to all employees, independent contractors, and volunteers of the Ohio Department of Rehabilitation and Correction (DRC) who provide or assist in providing religious services.

## IV.   DEFINITIONS

**Clergy of Record** - Clergy having been identified by the offender as their current outside clergy member. The criteria for approval of such a minister are set forth in DRC policy 76-VIS-01, Inmate Visitation.

**Contract Religious Provider** - Clergy or lay person contracted by the DRC to provide faith-specific services or general religious support.

**Extended Restrictive Housing (ERH)** - Housing that separates an inmate from the general population and restricts the inmate to their cell twenty-two (22) hours or more per day for a period of thirty (30) days or longer.

**Institutional Chaplain** - A clergy person serving full-time in a religious capacity and employed by the Department.

**Institutional Ministry Team (IMT)** - The IMT is a group composed of the chaplain(s) and religious services contractors tasked with the institution's religious services programming.

**Limited Privilege Housing (LPH)** - Assignment of an inmate to a cell or other designated area for the purpose of separating them from other inmates, but is still considered general population. Designated out of cell time shall be more than two (2) hours daily. Inmates may participate in meaningful activities, programs, and recreational opportunities as deemed appropriate by the managing officer.

**Religious Services Provider** - A clergy or lay person, other than an inmate, qualified to lead congregate religious activities in accordance with the tenets, and practices of their faith. The religious services provider may be a contractor or a volunteer. An inmate may not act in this capacity.

**Restrictive Housing (RH)** - Housing that separates an inmate from the general population and restricts the inmate to their cell twenty-two (22) hours or more per day.

**Secure Adjustment Unit (SAU)** - A unit dedicated to the housing of inmates who have committed ERH qualifying offenses but are seriously mentally ill or intellectually developmentally disabled and, as such, cannot be placed into ERH 1, 2 or 3. These units offer security, programming and mental health services to ensure the inmate's conditions of confinement do not qualify as Restrictive Housing. Inmates may only be placed into an SAU with the approval of the Serious Misconduct Panel (SMP) or upon reception as outlined in section VI.A.1 of DRC policy 53-CLS-04, Extended Restrictive Housing (ERH).

**Serious Misconduct Panel (SMP)** - A panel of two (2) correctional staff who have been selected by a regional director and trained by Legal Services, who are authorized to conduct all misconduct hearings for offenses that would qualify for placement in ERH. The SMP makes decisions on culpability and makes recommendations for appropriate housing assignments based upon the results of the hearing. The panel must consist of two (2) individuals who are not employed in the same prison where the behavior leading to the recommendation for ERH placement occurred.

**Transitional Program Unit (TPU)** - A specialized housing unit requiring close supervision of inmates that are placed in Restrictive Housing, Extended Restrictive Housing, or may be placed in Limited Privilege Housing.

**Volunteer Coordinator** - The employee assigned by the managing officer to coordinate all volunteer matters at a specific facility.

**Witness** - Sharing information or personal faith about religious beliefs without an attempt to coerce another person into changing from one religious belief to another.

V.    **POLICY**

It is the policy of the Ohio Department of Rehabilitation and Correction (DRC) to ensure that inmates, who wish to do so, may subscribe to any religious belief they choose. Inmate religious practices, as opposed to belief, may be subject to reasonable time, place and manner restrictions. Inmate participation in religious activities shall be voluntary. The opportunity for inmates to engage in particular religious practices shall be subject to the legitimate departmental or institutional interests and concerns, including security, safety, health, discipline, rehabilitation, order, and the limitations of and allocation of resources.

| SUBJECT: **Institutional Religious Services** | PAGE ___3___ OF ___7___. |
|---|---|

## I.   PROCEDURES

### A.   Institutional Chaplain

1.   The Institutional Chaplain has the primary responsibility for the development and implementation of the professional-pastoral aspect of the chaplaincy at his/her institution under the guidance of the religious services administrator. The Institutional Chaplain's duties are set forth in greater detail in the Religious Services Manual. Institution religious services shall conform to the additional guidelines set forth in the manual.

2.   Institutional Chaplains function as religious professionals within the correctional setting and shall not undertake or be required to undertake roles that are contrary to that of a spiritual provider.  Such prohibited duties include:  serving on the Rules Infraction Board (RIB) or Serious Misconduct Panel (SMP), Security Threat Group Team membership (except in a purely advisory manner), conducting strip searches and cell searches, Special Response Team membership, etc.  All religious staff members are exempt from firearms use, training, and instruction.  Institutional Chaplains are not exempt from unarmed self-defense training.

3.   Utilizing professional discretion, Institutional Chaplains shall have an advisory role in relation to security staff such as providing information on various religious groups' customs, burial procedures, and dietary needs.

4.   Institutional Chaplains provide for the spiritual needs of all requesting offenders regardless of faith preference or lack thereof. However, they are not required to compromise the fundamental tenets of their own faith.

5.   The Institutional Chaplain shall maintain items that will be used for congregate services in the religious services area.  These items shall be secured and accessible for scheduled services.  Additional congregate property may be brought into the facility by an approved religious leader or contract chaplain with prior authorization.  Requests for additional congregate items must be made through the religious accommodation process as set forth in DRC policy 72-REG-02, Religious Accommodations.

6.   The Institutional Chaplain/designee shall develop and maintain close relationships with religious resources in the community.

### B.   Institutional Religious Services

1.   The managing officer shall designate a deputy warden to provide administrative supervision of religious services.  The Institutional Chaplain(s) shall administer and supervise the religious service program in consultation with the religious services administrator.

2.   The religious services administrator shall ensure staff who have direct contact with inmates are given training regarding religious practices.

DRC 1362

| SUBJECT: **Institutional Religious Services** | PAGE ___4___ OF ___7___ |
|---|---|

3. The work of the chaplains and the operation of the religious services program necessitate the following provisions:

    a. Unless precluded by the managing officer for specific security reasons, the Institutional Chaplain shall have access to all areas of the institution including the TPU, ERH, SAU, and RTU units. Institutional Chaplains shall make weekly visits to TPUs, ERH, SAUs, and special housing such as infirmary, RTU, or protective custody. Visits to Restrictive Housing inmates shall be documented on the Restrictive Housing Program Staff Activity Log (DRC4112) located in the unit.

    b. The institution shall designate building space for worship services, classes, small groups, and offices. Staff shall consider the religious concerns of others when using religious services space for non-religious purposes. Items and fixtures used in religious rituals must always be handled with care and with consideration for the religious nature of these items.

    c. The institution shall provide access to non-inmate clerical support. Volunteers may provide support to assist the chaplain with office tasks and special projects.

4. All inmates shall be afforded access to religious services subject to legitimate departmental or institutional interests and concerns including security, safety, health, discipline, rehabilitation, order, and the limitations of and allocation of resources

    a. Congregate activities such as worship services, prayer services, study classes, etc., must be led by, or under the immediate control of, a chaplain or approved religious services provider.
    b. No purely religious event shall be made mandatory.
    c. The eligibility of an inmate to participate in the religious observances of a particular faith group shall be determined according to the faith requirements of that religious faith group.
    d. The specific process for inmate requests for religious accommodations is addressed in DRC policy 72-REG-02, Religious Accommodations.

5. The religious services administrator shall ensure inmates are not subject to coercion, harassment, or ridicule due to religious affiliation.

6. Religious activities may be suspended for all or a portion of the inmate population of an institution when continued conduct of such activities threatens the security and good order of the institution. Such events include, but are not limited to, a general emergency, a security lockdown, and when mixing of different security levels must be prevented.

7. Inmates may be denied access to specific religious services if they have engaged in a pattern of disruptive activity in the service on prior occasions. Possession of or access to religious items may be restricted when the use of those items has threatened or may likely threaten the security and good order of the institution.

8. Witnessing as defined in this policy is allowed.

| SUBJECT: **Institutional Religious Services** | PAGE ___5___ OF ___7___ |
| --- | --- |

**C.**      **Contract Religious Providers**

1.      Selection of a contract religious provider shall ensure coverage for the largest religious catchments in the facility.

2.      The securing, hiring, and supervision of appropriate contract religious providers shall be the responsibility of the assigned deputy warden, in consultation with the religious services administrator. The deputy warden may designate an Institutional Chaplain as the contract monitor for a religious contractor to provide reports and serve as an informal point of contact.

3.      All contract religious providers shall be advised that they should appeal to the broadest range of adherents in the faith group. They should emphasize the common, fundamental teachings of the faith. A contract religious provider shall not serve as clergy of record for any inmate at the institution at which they are serving. An exception is death row inmate(s). Death row inmates may select any person as their clergy of record, to include any contract clergy person, volunteer, relative and/or any person that functions in the role of a clergy person.

4.      When the full time Institutional Chaplain is absent for the normal weekly worship, a contract religious provider may conduct the regular weekly worship service. If no contractor is available, a substitute clergy from the community will be contracted to provide the worship service. Such clergy shall be paid at rates set by the religious services administrator, and in accordance with Administrative Regulation 5120-9-44, Clergy Substitute for Regular Full-Time State Employed Clergy.

**D.**      **Institution Ministry Team**

1.      The purpose of the Institution Ministry Team (IMT) is to facilitate the clear and timely communication of information and directives.

2.      The IIMT is comprised of the Institutional Chaplain and contract religious providers. The IMT shall review and evaluate all areas of the religious services program including the work of religious volunteers. The Institutional Chaplain shall serve as the IMT team leader. The leadership of the IMT may be rotated between the Institution Chaplains at the discretion of the managing officer/designee.

3.      The IMT shall meet at a minimum two (2) times per year. Long-standing volunteers with regular responsibilities may, at the direction of the IMT team leader, attend team meetings to add their perspective.

4.      The IMT shall set annual objectives for improving the delivery of services. These objectives shall be determined at a team meeting held in the 3rd or 4th quarter of the fiscal year.

5.      The IMT shall submit to the religious services administrator from this meeting an Annual Report of Objectives for the coming fiscal year (starting July 1st), due no later than June

DRC 1362

| SUBJECT: **Institutional Religious Services** | PAGE __6__ OF __7__ . |
|---|---|

15th of that year. The team shall report specific goals and action steps, including any obstacles and significant needs that require attention.

**E.   Religious Volunteers**

1. The Institutional Chaplain, in consultation with other religious staff and the managing officer/designee, shall determine how and when to utilize the services of religious volunteers.

2. Institutional staff wishing to serve as religious volunteers must submit a request to the Institutional Chaplain describing what volunteer services they want to provide. The Institutional Chaplain shall submit a recommendation to the managing officer for final approval. Once approved, the employee shall be entered into DOTS Portal under the volunteer section by the Volunteer Coordinator. They will serve under the religious and program supervision of the Institution Chaplain. Staff volunteering to preach at worship may only do so at facilities where they are not employed.

3. Volunteers shall be recruited to assist in religious programs. Approval of volunteers is subject to DRC policy 71-SOC-01, Recruitment, Training, and Supervision of Volunteers for Institutions. The role and involvement of these volunteers shall be at the discretion of the Institution Chaplain(s) with approval of the managing officer/designee. Institutional Chaplains shall provide consultation to volunteers in every aspect of their ministry. Volunteers shall report issues of concern to the institutional chaplain and maintain clear lines of communication at all times.

4. Volunteers shall be informed that in all of their teaching they are to appeal to the broadest possible range of persons in the faith group. Sectarian distinctions are to be avoided by appealing instead to the common, fundamental teachings of the faith. Questions that may generate controversy shall be referred to the Institutional Chaplain(s).

5. All religious volunteers shall have proper religious and security oversight. Volunteers shall conduct services or programs with oversight as specified in DRC policy 71-SOC-01, Recruitment, Training, and Supervision of Volunteers.

**F.   Clergy Privileged Communications**

1. All clergy serving within the DRC (chaplains, contractors, and clergy volunteers) shall be advised that the professional expectations for clergy regarding confidentiality are honored in accordance with Ohio Revised Code 2317.02, Privileged Communications, Section C.

2. In no case shall clergy be compelled to divulge communication with an inmate when one or more of these conditions apply:

   a. The communication takes place in the context of a formal confession of sin;
   b. The statements of the inmate are retrospective in nature and not a communication relating plans to harm self or others; or

DRC 1362

| SUBJECT: **Institutional Religious Services** | PAGE___7___ OF ___7___ |
|---|---|

    c.  There is reason to believe that divulging the substance of the communication will irreparably harm the clergy person's ability to carry out their duties or is a violation of a sacred trust.

3.  Clergy have a positive duty to report any communication from an inmate detailing plans to harm themselves or others, or another person's plans to harm themselves or others.

**G.**    **Clergy of Record**

Inmates may receive visits from their clergy of record as provided in DRC policy 76-VIS-01, Inmate Visitation.

**Related Department Forms:**

Restrictive Housing Program Staff Activity Log        DRC4112

DRC 1362

| SUBJECT:<br>**Religious Accommodations** | PAGE ___1___ OF ___7___ |
|---|---|
| | NUMBER: **72-REG-02** |
| RULE/CODE REFERENCE:<br>AR 5120-9-19 | SUPERSEDES:<br>72-REG-02 dated 03/04/10 |
| RELATED ACA STANDARDS:<br>4-4319; 2-CO-5E-01, 5E-02 | EFFECTIVE DATE:<br>**March 12, 2018** |
| | APPROVED: |

**Ohio** | Department of
Rehabilitation & Correction

## I. AUTHORITY

Ohio Revised Code 5120.01 authorizes the Director of the Department of Rehabilitation and Correction, as the executive head of the department, to direct the total operations and management of the department by establishing procedures as set forth in this policy.

## II. PURPOSE

The purpose of this policy is to set forth the manner in which inmate requests for religious affiliation change and accommodations shall be addressed.

## III. APPLICABILITY

The policy is applicable to employees, contractors, and volunteers of the Ohio Department of Rehabilitation and Correction (DRC) who have a part in providing for the religious needs of inmates.

## IV. DEFINITIONS

**Non-Work Day** - A day when an inmate is excused from work based upon a religious belief, holiday, or observance.

**Religious Accommodation** - A religious practice not addressed in other religious policies which has been authorized by the DRC.

## V. POLICY

It is the policy of the Ohio Department of Rehabilitation and Correction (DRC) that inmates have freedom of conscience to seek and/or subscribe to any religious belief. The DRC will seek to meet inmate religious needs within the unique parameters of the correctional setting. When an inmate makes a request that is not addressed directly within policy, he/she shall have recourse to make this known to the institution. The decision whether or not and how a request is to be accommodated shall be made according to the procedures in this policy. This decision shall consider:

DRC 1361 (Rev. 12/17)

| SUBJECT: **Religious Accommodations** | PAGE___2___ OF ___7___ |

- the extent to which the request reflects or is based upon a sincerely held religious belief;
- available resources;
- adequacy of existing practices;
- the operational concern for safety, security, and the good order of institutions; and
- any other legitimate penological concerns.

## VI.    PROCEDURES

A.    The inmate's religious affiliation shall be noted and established at the reception centers. An inmate's declaration of religious affiliation at the reception center shall be accepted as valid for the purposes of establishing affiliation. Accommodations requested which are not already addressed in DRC Religious Service policies shall not be granted automatically based on affiliation alone. Such requests require review and further verification the request is religiously based and not in conflict with the operational and security concerns of the institution.

B.    Religious Accommodations and practices shall not be restricted or suspended for disciplinary reasons unless the infraction is directly related to the accommodation or practice being restricted or suspended. Special Religious Accommodations may be provisionally granted; however, they are subject to review and if circumstances warrant, modification or discontinuance. The institution may revoke or modify a previously granted accommodation for religious practice if the inmate accommodated violates the terms under which the Religious Accommodation was granted. Religious Accommodations may be reviewed based on security, class, or changes in status other than general population.

C.    All inmate religious activities and property shall be subject to reasonable restrictions regarding time, place and manner in which such practices may be accommodated. All group religious activities are subject to institutional concerns for safety, security and orderly institutional operation, including staff supervision of any such activities. The classification level, institutional offense records, institutional adjustment records, STG records, etc. of those requesting the congregate activity as part of a requested accommodation may be considered in imposing a restriction.

D.    All religious property is subject to search and inspection; however, staff members shall treat religious items with respect and shall handle them only to the extent necessary to conduct such inspections.

E.    The means of accommodating religious practices may vary among institutions based on the nature, security level, or population of the institution.

F.    The DRC will not accommodate any religious practice that encourages racial and/or ethnic discrimination or violence.

G.    Request for Religious Accommodation

For those inmates who have established their religious affiliation and wish to request an accommodation not addressed in DRC Religious Services policies, the inmate shall request a meeting with the chaplain and the following steps shall take place:

DRC 1362

| SUBJECT: **Religious Accommodations** | PAGE___3___ OF ___7___ |
|---|---|

1. The inmate requests and shall be provided the Request for Religious Accommodation form (DRC4326).

2. It is the inmate's responsibility to complete the Request for Religious Accommodation form (DRC4326) which shall include the following:

   a. Branch of the religion to which the inmate belongs;
   b. The specific practice, observance, or item requested;
   c. Basis for the requested religious practice (origin of request in the writings or traditions of the faith group); and
   d. Names of any religious leaders needed to verify the request.

3. The inmate shall submit the completed Request for Religious Accommodations (DRC4326) to the chaplain. The chaplain shall meet with the inmate and may ask the inmate to explain his/her views. The inmate shall have the opportunity to explain his/her request and to discuss the matter with the chaplain. The inmate shall be given the opportunity to submit written materials in support of his/her request.

4. Following the meeting, the chaplain shall record his/her recommendation and any reasons in support concerning the inmate's request. The chaplain may note any apparent insincerity to the extent it is relevant. The chaplain may consider whether the request is consistent with the established traditions of the faith group, although that factor need not be controlling. The chaplain may also consider any operational difficulties presented by the request and any obvious and reasonable alternatives.

5. The chaplain shall refer the request together with the chaplain's recommendation and reasons to the institution Religious Accommodation Review Committee within twenty-one (21) days. This committee shall include, at a minimum, the chaplain, the appropriate deputy warden/designee, the chief of security/designee and other such persons as may be advisable on particular issues.

   *increased from 14 3/4/10*

6. The committee shall evaluate the written request for accommodation together with any supporting materials and the chaplain's recommendation. In addition to the religious nature of the request, the committee shall evaluate the operational and security implications of the requested Religious Accommodation. The committee shall also seek input from the religious services administrator to determine whether the requested accommodation has been addressed elsewhere in the DRC and the potential impact of the requested accommodation on other institutions. The committee shall consider the DRC policies that are applicable to all faith groups (i.e., religious feasts, grooming standards, etc.).

7. Upon completing its evaluation, the committee shall recommend an appropriate response to the Request for Religious Accommodation (DRC4326). The committee shall record its recommendation along with a brief explanation of its reasons. The committee may recommend the request be granted, denied or may recommend some alternative accommodation. This recommendation and supporting explanation shall be recorded on the Response to Request for Religious Accommodation (DRC4327). The committee

DRC 1362

shall exercise best efforts to complete its response within forty-five (45) days of receiving the request.

8. The committee shall forward the Request for Religious Accommodation (DRC4326) along with its recommended Response to Request for Religious Accommodation (DRC4327) to the managing officer/designee for review and approval. The managing officer/designee may approve, disapprove or modify the committee's recommended response or the managing officer/designee may return the matter to the committee for further consideration. If the managing officer/designee considers any factors not identified by the committee, the managing officer/designee shall identify those factors and explain his/her decision.

9. The managing officer/designee shall record his/her decision on the Response to Request for Religious Accommodation (DRC4327), forward the decision to the inmate, and shall forward a copy of both the Request and the Response to the Chaplain's Office. To the extent possible the managing officer's/designee's decision shall be made within fifteen (15) business days of receiving the committee's recommendation.

10. If the inmate is requesting an accommodation for one of the matters listed in section VI.H of this policy, the managing officer/designee shall record a recommendation on the Response to Request for Religious Accommodation (DRC4327). The managing officer/designee shall forward the Response to Request for Religious Accommodation (DRC4327) and all accompanying materials to the religious services administrator for a final decision. The managing officer/designee shall also forward a copy of the response form to the inmate and to the Chaplain's Office.

11. The inmate shall be permitted to appeal any final decision and object to any recommendation made by the managing officer/designee. The inmate must submit the Offenders Appeal of Decision Regarding Religious Accommodation (DRC4442) to the religious services administrator within fifteen (15) business days.

12. Once a Religious Accommodation has been granted and/or completed, the inmate must wait twelve (12) months to request a change in that particular Religious Accommodation.

H. The following matters shall be referred to the religious services administrator:

1. New Dietary Requests: Requests that would require the creation of a special diet, a religious "feast" menu, or that would require the purchase of special foods (e.g., kosher, halal, etc.) not currently offered, or which would expand access to such diets to different or additional religious groups must be referred to the religious services administrator for final decision. Decisions to accommodate an individual inmate with existing dietary options (e.g., meatless diet, etc.) may be made at the institution.

2. Congregate Services: The approval of Congregate Services for any group and requested by at least five (5) documented members of that group not already receiving such services must be referred to the religious services administrator for final decision.

3. The recognition of any religious holiday not previously observed or recognized.

| SUBJECT: **Religious Accommodations** | PAGE __5__ OF __7__ |
| --- | --- |

I.    The religious services administrator shall consult with the regional directors, the regional operations managers, the STG coordinator, food service managers, dieticians, and any other person whose expertise might be relevant, in order to arrive at the final decision on any appeal or objection. When appropriate, the religious services administrator shall convene a meeting of such interested persons to review the requested accommodation and the recommendations from the institution.  The religious services administrator shall issue a final decision within sixty (60) days of receiving the request for accommodation from the institution. This decision shall be distributed to the inmate, the managing officer, the institutional chaplain, and scanned into OnBase.

J.    Religious accommodations shall be subject to the following general provisions:

1.    Special Rites - An inmate's request to participate in a special ceremony, procedure, observance, or activity shall be evaluated with respect to the religious customs. Any contract clergyperson, volunteer, or minister of record who wishes to perform a special rite for an inmate shall first obtain approval from the chaplain. Any inmate wishing to participate in such special rite shall request an accommodation using the Request for Religious Accommodation (DRC4326).  In addition to the general considerations stated elsewhere in this policy, other considerations include:

    a.    Availability and cost of an appropriate religious leader;
    b.    Availability and cost of custody supervision;
    c.    Cost of special materials or other arrangements;
    d.    Any other factor that may affect the security or orderly operation of the institution.

2.    Work Accommodations - An inmate may request to be excused from work in order to observe a religious holiday as a Non-Work Day.  An inmate may also request to be excused for a shorter period of time during a work day in order to attend a religious activity of their particular faith group (e.g., worship, prayer, or study groups, etc.).

    a.    The inmate requesting a Non-Work Day must submit a written request for such an accommodation to the chaplain at least thirty (30) days in advance of the holiday or occasion in question.

        i.    An inmate requesting to observe a non-work day or other religious activity that recurs at intervals of less than thirty (30) calendar days (e.g., a weekly Sabbath, weekly worship service, etc.) need not make a specific request for each occasion, but shall need to make only one (1) request.

        ii.    An inmate requesting to be excused for part of a work day for a religious service shall either submit a written request for such an accommodation to the chaplain no less than thirty (30) calendar days prior to the requested observance or in the alternative, the person leading that faith group or observance may submit a list of attendees to the chaplain for approval.

| SUBJECT: **Religious Accommodations** | PAGE___6___ OF __7__ |
|---|---|

    b.  In addition to the general concerns expressed elsewhere in this policy, the institution Religious Accommodations Committee shall consider the following points in deciding work accommodations:

        i.  Whether the inmate is assigned to a work detail that is essential to the operations of the facility; or

        ii.  Whether allowing the inmate to attend would be incompatible with safety, security, or the reasonable allocation of personnel, space or other available resources. Where possible and consistent with sound correctional practice, such requests should be granted.

    c.  Inmates who are excused from work to observe a Non-Work Holy Day or attend a religious activity may be required to work alternative hours when possible to make up any hours missed. Inmates assigned to work programs operated by the Ohio Penal Industries (OPI) may be allowed to take personal leave, leave without pay, or administrative leave in accordance with the rules governing that program in order to facilitate the observance of the holy day or religious activity.

3.    Special Dietary Practices or Restrictions - Inmates requesting a religious diet shall request a religious accommodation using the Request for Religious Accommodation, (DRC4326). Where feasible, DRC will strive to accommodate dietary restrictions by providing a combination of foods that is consistent with dietary restrictions and that fulfill the nutritional requirements of DRC Policy 60-FSM-02, Food Service Operations. Inmates must submit requests for special temporary dietary restrictions or practices as a part of a religious holiday or observance at least ninety (90) days in advance of said holiday or period of observance. In addition to the general considerations stated elsewhere in this policy, the committee shall consider the following:

    a.  Whether the dietary practice is part of a religious holiday or observance;
    b.  The general practice or tradition regarding the dietary restriction or practice in question; and
    c.  The impact of its decision on the institution or institutional operation.

4.    Religious property - Religious items, apparel, and literature are subject to the following general provisions:

    a.  All religious objects, apparel, and literature are subject to the general regulations affecting similar property in institutions.

    b.  Religious literature and recordings may only be withheld under the terms of the DRC Policy 75-MAL-02, Printed Material, and Administrative Regulation 5120-9-19, Printed Material.

    c.  All such items are subject to regulations regarding limits and storage unless a valid institutional exemption is in effect.

| SUBJECT: **Religious Accommodations** | PAGE   7   OF   7  . |
|---|---|

    d.  Religious items not otherwise permitted in the institution may be approved if their use or possession is religiously based and their presence does not constitute a threat to the security and good order of the institution.


**Related Department Forms:**

| Request for Religious Accommodations | DRC4326 |
|---|---|
| Response to Request for Religious Accommodations | DRC4327 |
| Offender's Appeal of Decision Regarding Religious Accommodation | DRC4442 |

DRC 1362