IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RANDY OLIVER,** | : |
| Plaintiff, | : Case No. 2:19-cv-619 |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| **DAVID GRAY,** *et al.*, | : Magistrate Judge Jolson |
| Defendants. | : |

## **OPINION & ORDER**

This matter is before the Court on Magistrate Judge Jolson's November 23, 2020 Report and Recommendation (ECF No. 45) recommending the Court grant Defendant Sunni-Ali Islam's Motion for Summary Judgment (ECF No. 44). For the following reasons, the Court **ADOPTS** the Magistrate's Report and Recommendation. Defendant's Motion for Summary Judgment is **GRANTED,** and this case is dismissed.

### I.  FACTUAL BACKGROUND

Plaintiff Randy Oliver was incarcerated at Belmont Correctional Institute ("BCI") in St. Clairsville, Ohio during the period relevant to the allegations. (ECF No. 4 ¶ 5). Mr. Oliver is a practicing Muslim. (*Id.* ¶ 15). He alleges that several correctional staff members at BCI—Warden David Gray, Deputy Warden Mary Potter, Correctional Officer Trish Bosley, Chaplin Jeffrey A. Burger, and Mr. Sunni-Ali Islam, the Imam for Islamic Services—interfered with his exercise of religion and retaliated against him for filing grievances in response. (*Id.* ¶¶ 6–10). In his complaint, Mr. Oliver alleges that the Defendants have "not allow[ed] him to study, pray, or have affiliation with his Muslim faith." (*Id.* ¶ 15).

1

Mr. Islam is now the only remaining Defendant. Mr. Oliver claims that Defendant Islam is responsible for "not doing his duty to place Plaintiff on the inmate Islamic list to practice his Islamic faith." (*Id.* ¶ 10). He also alleges that Mr. Islam mishandled the paperwork that would have placed Plaintiff on the Islamic list and that Mr. Islam lied and said Plaintiff was on the list of inmates identified in the facility's system as Muslim (the "List"). (*Id.*). He further alleges that he filed grievances related to the correctional staff's interference with his religious practices on the following dates: May 21, 2018; May 22, 2018; June 1, 2018; June 4, 2018; and July 3, 2018. (*Id.* ¶ 12).

## II. PROCEDURAL BACKGROUND

Plaintiff filed a pro se Complaint and Motion for Preliminary Injunction on February 22, 2019 against Warden David Gray, Deputy Warden Mary Potter, Correctional Officer Trish Bosley, Chaplin Jeffrey A. Burger, and Mr. Islam, the Imam for Islamic Services, for alleged violations of his freedom of religion while he was incarcerated at BCI. (ECF Nos. 1, 2, 4). He seeks $50 to $100 in nominal damages and $20,000 in punitive damages for Defendants' "evil intent" or reckless or callous indifference to his rights. (ECF No. 4 ¶¶ 29–30).

This Court has previously adopted two Report and Recommendations by Magistrate Judge Jolson in this matter. On May 24, 2019, this Court adopted the Report and Recommendation recommending the Plaintiff's Motion for Preliminary Injunction be denied and granting in part the Defendants' Motion to Dismiss on Plaintiff's claims for declaratory relief and injunctive relief because he had since been released from prison. (ECF No. 14). On September 29, 2020, this Court adopted the Magistrate's Report and Recommendation, granting the Defendants' Motion for Summary Judgment and denying Defendant Islam's Motion to Dismiss. (ECF No. 40). This Court granted summary judgment to the other Defendants because Plaintiff had not alleged any direct

2

involvement and they could not be held liable for a failure to act. (*Id.* at 7–9). This Court denied without prejudice Defendant Islam's motion to dismiss, finding that the Plaintiff had taken reasonable steps to identify him in the Complaint and so Mr. Islam had not been improperly named as a defendant. (*Id.* at 6). Magistrate Judge Jolson then issued an order, directing the U.S. Marshal Service to serve Defendant Islam at his correct address. (ECF No. 41).

On October 14, 2020, Defendant Sunni-Ali Islam filed an Answer to the Plaintiff's Complaint (ECF No. 43) and a Motion for Summary Judgment (ECF No. 44). In his Motion for Summary Judgment, Defendant Islam argues that the Ohio Department of Rehabilitation and Correction ("ODRC") has a policy that requires Muslim inmates to send a communication to the Imam forty-five days before Ramadan begins. (ECF No. 44 at 2). Defendant Islam avers that Mr. Oliver did not follow the required procedure. (*Id.*). Because the Plaintiff did not follow the procedures, Mr. Islam argues that he is entitled to summary judgment. (*Id.* at 3). Plaintiff did not file a response in opposition to the Motion for Summary Judgment.

On November 23, 2020, Magistrate Judge Jolson issued a Report and Recommendation, recommending that this Court grant Defendant Islam's Motion for Summary Judgment, finding that the Plaintiff has not created a genuine issue of material fact as to whether the Defendant substantially burdened his ability to exercise his religion and that, as a result, remaining Defendant Islam is entitled to summary judgment. (ECF No. 45). Mr. Oliver timely filed an objection to the Magistrate's Report and Recommendation on December 2, 2020. (ECF No. 46). Mr. Oliver's objection contests some of the facts in the Magistrate's Report and Recommendation: that his status as a Muslim was documented in the Plaintiff's records and the Defendants' evidence and that he did speak with the Imam about the failure to be listed as a Muslim. (*Id.*).

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b)(3), an objection to a magistrate judge's report and recommendation is reviewed *de novo* by the district judge. Upon this review, the district judge determines whether to "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." *Id*. When a pleader fails to raise specific issues, the court will consider this a general objection to the magistrate judge's report and will not recognize it. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). Objections that quote language from the report and highlight issues with specificity surpass this 'general' threshold. *Id.* at 994. However, *pro se* litigants will be held to a lower standard that permits their pleadings to be "liberally construed." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).

A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party cannot prevail if there exists "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Anderson*, 477 U.S. at 250).

## IV. LAW & ANALYSIS

Plaintiff Oliver claims that Defendant Sunni-Ali Islam interfered with his First Amendment right to observe Ramadan while incarcerated. Mr. Oliver alleges that Mr. Islam is responsible for "not doing his duty to place Plaintiff on the inmate Islamic list to practice his Islamic faith." (ECF No. 4 ¶ 10). He also alleges that Mr. Islam mishandled the paperwork that would have placed Plaintiff on the Islamic list and that Mr. Islam lied and said Plaintiff was on the Islamic list. (*Id.*). As a result, Mr. Oliver alleges that he has been deprived of "all means to practice his religion" and that, when incarcerated, he was not allowed to study, pray, or have affiliation to his Muslim faith. (*Id.* ¶¶ 14–15). Defendant Islam now moves for Summary Judgment, arguing that ODRC has set

forth policies regarding Muslim observances and practices, including how an incarcerated person can be placed on the list to observe Ramadan, and that Mr. Oliver's failure to follow these policies entitles Mr. Islam to summary judgment. (ECF No. 44 at 2–3).

An incarcerated person "does not check his First Amendment right to the free exercise of religion at the prison door." *Cook v. Sheldon*, No. 1:19CV2914, 2020 WL 3317315, at *3 (N.D. Ohio June 17, 2020) (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). To establish a First Amendment free exercise claim, a plaintiff must show that: (1) the belief or practice he seeks to protect is religious in his "own scheme of things," (2) his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief. *See Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987). An institution or individual may violate an individual's First Amendment rights when it places a "substantial burden" on one's "observation of a central religious belief or practice." *Cook*, 2020 WL 3317315, at *3 (citing *Hernandez v. C.I.R.*, 490 U.S. 680, 697 (1989)). An action imposes a substantial burden "when that action forced an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007)). When a Plaintiff satisfies each of the required elements of a First Amendment claim, the analysis then shifts to assess whether the challenged practice of prison officials furthers a legitimate penological objective. *See Kent*, 821 F.2d at 1225.

At issue in this case is the third element only: whether Defendant Islam infringed upon Mr. Oliver's religious beliefs. In his Complaint, Mr. Oliver alleges Mr. Islam infringed upon his religious beliefs by denying him the opportunity to observe Ramadan. (ECF No. 4 ¶ 10). Defendant

Islam argues that, because Plaintiff failed to follow the prison policies for observing Ramadan, the Defendant could not have infringed upon his religious beliefs by denying him the opportunity to participate in Ramadan. (ECF No. 44 at 2–3). In support of his Motion, Mr. Islam attaches two declarations: his own and the earlier filed declaration of Mary Potter, Deputy Warden of Special Services at BCI. (ECF Nos. 44-1 & 44-2). Ms. Potter's declaration included several exhibits. First, it attaches 72-REG-12, the ODRC policy concerning "Muslim Religious Practices," which was also filed as an exhibit to Mr. Oliver's Complaint. (ECF No. 44-2; *see also* ECF No. 4). Second, it includes the Departmental Offender Tracking System Portal ("DOTS") entry for Mr. Oliver, indicating his religious preference as "No Preference" as of October 1, 2017. (*Id.*). Third, the declaration attaches the appeal for Mr. Oliver's grievance filed in May 2018 concerning his religious exercise concerns. (*Id.*). Fourth, it contains several communications concerning the observance of Ramadan and institutional policies. (*Id.*). One such communication is a "JPay" communication from Ms. Potter to all persons incarcerated at BCI advising them how to sign up for Ramadan, including the forty-five-day deadline. (*Id.*).

Mr. Oliver did not respond to the Motion for Summary Judgment filed by Mr. Islam but did file an objection to Magistrate Judge Jolson's Report and Recommendation. In his objection, Mr. Oliver controverts two factual underpinnings of the Magistrate's findings. First, he claims that his DOTS record indicated he was listed as a Muslim "'without' preference to which d[e]nomination." (ECF No. 46). Second, he asserts that he did speak with the Imam about the fact that he was not listed as a Muslim and did not appear on the list of incarcerated people who could observe Ramadan. (*Id.*). The purpose of an objection is "to argue against the findings, conclusions, and recommendations of the [Report and Recommendation] based on the law and the record." *McIntosh v. Hudson*, 632 F. Supp. 2d 725, 729 (N.D. Ohio 2009). Arguments not raised by a party

7

before a Magistrate Judge are normally deemed waived. *See Lane v. Wexford Health Sources*, No. 2:10-cv-389, 2011 WL 3584331, at *2 (S.D. Ohio Aug. 12, 2011); *see also Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (absent compelling reasons, parties cannot raise at the district court new arguments or issues not presented to magistrate judge). Mr. Oliver's objection challenges the factual record supporting the Magistrate's legal conclusion that summary judgment is appropriate. While Mr. Oliver raised these issues for the first time in his objection, rather than in response to the summary judgment motion, such that they would normally be deemed waived, the Court will address his arguments for the sake of judicial economy.

To succeed on a motion for summary judgment under Rule 56, a movant need only demonstrate that the nonmoving party has failed to "make a showing sufficient to establish the existence of an essential element" of that claim. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This Court must determine whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton*, 8 F.3d at 346 (quoting *Anderson*, 477 U.S. at 251–52). To survive a motion for summary judgment, "the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). This Court liberally construes the pleadings and filings of pro se litigants, *see Yagley v. OSHA*, 461 F. App'x 411, 414 (6th Cir. 2012), but pro se litigants must still abide by the Federal Rules of Civil Procedure and any local rules. *Longino v. City of Cincinnati*, No. 1:12-cv-424, 2013 WL 831738, at *2 (S.D. Ohio Mar. 6, 2013).

The plaintiff bears the burden of establishing each element of a First Amendment free exercise claim, including the disputed element here: whether the Defendant's behavior infringed upon his practice or belief. *Kent*, 821 F.2d at 1224–25. Defendant Islam may prevail on his Rule 56 motion if "the record taken as a whole could not lead a rational trier of fact to find" that Mr. Islam's behavior infringed upon Mr. Oliver's religious practice or belief. *See Matsushita*, 475 U.S. at 587. In his Motion for Summary Judgment, Defendant Islam contends that no rational trier of fact could return a verdict for Mr. Oliver because he failed to follow prison policies requiring individuals to sign up in advance for observance of Ramadan. (ECF No. 44 at 2). In his Complaint, Plaintiff alleges that Defendant did not carry out his duty "to place Plaintiff on the inmate Islamic list to practice his Islamic Faith," that he "mis-handled the paper work to properly place Plaintiff on the Islamic list," and that he said Plaintiff "was already on the Islamic list." (ECF No. 4 ¶ 10).

When a person is newly incarcerated, ODRC policy requires that his religious affiliation is noted and established at the reception center and will be accepted as valid for the purposes of establishing affiliation. (ECF No. 4 at 26). Mr. Oliver's DOTS "Inmate Religious Information sheet," dated October 1, 2017, listed Mr. Oliver as having no religious preference and recorded that he wanted no visits from his religious leaders. (ECF No. 44-2 at 7; ECF No. 44-2 at 9). On March 16, 2018, the Deputy Warden of Special Services, Mary Potter, caused a notice to be posted in prison dormitories about how to sign up for Ramadan observance. (*Id.* at 11). The notice announced that Ramadan would begin on May 15, 2018 and continue for 30 days. (*Id.*). The notice also explained that arrangements would be made to provide Muslims with meals at the appropriate times during Ramadan. (*Id.*). It also noted, in bold typeface, that "Muslim inmates requesting to observe Ramadan should kite the Imam, 45 days before the first day of Ramadan." (*Id.*). The notice then quoted prison policy 72-REG-12, governing Muslim religious practices, which dictates that

9

the facility's Imam "will be the only person to add or delete a Muslim inmate from the fast list." (*Id.*). Ms. Potter's declaration also included an announcement sent to all incarcerated people, including Mr. Oliver, via JPay on March 16, 2018, which is identical to the notice posted in the dormitories. (*Id.* at 12). Mr. Oliver does not dispute that he received the JPay communication detailing the policies to observe Ramadan.

Mr. Islam attached his own affidavit in support of his Motion for Summary Judgment. (ECF No. 44-1). In this affidavit, he testifies that Mr. Oliver "did not follow any of the procedure to be added to the list" and so he was not included on the list of observers. (*Id.* ¶ 8). Mr. Oliver has not submitted evidence, in his Complaint or objection, that he followed the procedures to be added to the list. In his Complaint, Mr. Oliver states that he utilized the prison grievance procedure to resolve his exclusion from the list, but the grievance process did not resolve his issues. (ECF No. 4 ¶¶ 11–13). On May 21, 2018, Mr. Oliver submitted a grievance that was being prevented from practicing his religion. (ECF No. 44-1 at 8). In this grievance, Mr. Oliver states that he followed the proper channel to be placed on the DOTS list, that the Imam "said [he was] on the list and shouldn't have anymore problems." (*Id.*). Mr. Islam attests that he never informed Plaintiff he was on the "Islamic list." (ECF No. 44-1 ¶ 9). On May 22, 2018, Chaplain Jeffrey Burger responded to Plaintiff's grievance that his DOTS page listed his religion as "No Preference." (ECF No. 44-1 at 8). Mr. Burger suggested that Mr. Oliver "work with the Imam in changing your preference" and the Imam could change his faith in DOTS to Muslim, allowing him to participate in Islamic holidays and fast days. (*Id.*). Mr. Oliver escalated the grievance on May 22, 2018 and responded that he had spoken with the Imam, who told him his name was on the List. (*Id.*). On June 1, 2018, the Office of the Inspector of Institutional Services responded to Mr. Oliver's escalated and

10

informed him that his religious preference on DOTS was not listed as a Muslim and so he was not placed on the List. (*Id.*).

On May 29, 2018, after receiving a call from Mr. Oliver's mother, Ms. Potter e-mailed Mr. Islam that Mr. Oliver would be given a pass to come see him that week about his inability to participate in Ramadan. (ECF No. 44-2 ¶ 6; ECF No. 44-2 at 10). On June 1, 2018, Ms. Potter's secretary issued a pass to Mr. Oliver to meet with Mr. Islam on that day. (*Id.*). Mr. Islam attests that Mr. Oliver did not use the pass to attend Friday prayer on June 1, 2018 and that they did not speak on that date. (ECF No. 44-1 ¶ 9). Mr. Islam argues that the sworn testimony and evidence lead only to "one conclusion, that Plaintiff was responsible for his own failure to make any efforts to follow the procedures" and that Plaintiff's claims against him should be dismissed. (ECF No. 44 at 3). Mr. Islam has satisfied his initial burden under Rule 56(c)(1) by citing with particularity those portions of the record upon which he relies show the absence of a genuine issue of material fact regarding Mr. Oliver's claim. The declarations of Ms. Potter and Mr. Islam are based on their personal knowledge, set out facts which would be admissible in evidence, and show that the declarants are competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

Mr. Oliver submitted a verified and notarized complaint, as well his objection to the Report and Recommendation, in support of his allegations against Mr. Islam. (ECF Nos. 4, 46). A party must identify "specific facts, as opposed to general allegations" to establish that a rational trier of fact could rule in his favor on a disputed element. *Viet*, 951 F.3d at 823 (citing 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, at 501 (4th ed. 2016)). At the summary judgment stage, "[c]onclusory statements unadorned with supporting facts" will not support a finding that there is a factual dispute for a jury. A nonmoving plaintiff can survive summary judgment by raising claims in an affidavit. *See Kinard v. Valone*, 2020 WL 4044991, at *2 (6th

11

Cir. May 15, 2020) (finding questions of fact raised as to administrative exhaustion of First Amendment retaliation claim where non-moving party raised claims in affidavit). When filing his objection, Plaintiff "had the duty to come forward with evidentiary materials to show the existence of a genuine dispute on this issue." *See Lane v. Wexford Health Sources*, 2011 WL 3584331, at *3 (citing *Celotex*, 477 U.S. at 322). While this Court liberally construes pleadings and filings, it may not convert an objection into an affidavit.

As it stands, Mr. Oliver's only sworn allegations against Mr. Islam are that he failed to place Plaintiff on the Islamic list, that he mishandled paperwork, and that he told Plaintiff he was already on the Islamic list. The DOTS system and the affidavits of Ms. Potter and Mr. Islam establish that Mr. Oliver was not listed as a Muslim. Mr. Islam testifies that Plaintiff did not use an issued pass to discuss the issue and that he did not inform Plaintiff that he was already on the Islamic list. A practice does not violate an incarcerated individual's free exercise unless it places a substantial burden on religious belief or practice, which is a fact-intensive inquiry. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). Requiring an incarcerated person to sign up in advance has been deemed reasonable by other courts. *See, e.g.*, *Missouri v. VanSickle*, 2019 WL 613339, at *5 (W.D. Mich. Jan. 23, 2019), *report and recommendation adopted*, No. 2:17-CV-25, 2019 WL 588100 (W.D. Mich. Feb. 13, 2019) (collecting cases). A sign-up requirement may become unreasonable if it becomes "inflexible" and defendants refuse to accommodate anyone who has failed to abide by the policy. *See id.* (denying summary judgment where plaintiff missed deadline by one week and institution refused to accommodate him after years of participation in Ramadan at facility); *see also Hardrick v. MacLaren*, No. 2:17-CV-00029, 2018 WL 3624956, at *4 (W.D. Mich. June 18, 2018), *report and recommendation adopted*, No. 2:17-CV-29, 2018 WL 3619266 (W.D. Mich. July 30, 2018)

(denying summary judgment where plaintiff missed deadline and defendants did not explain why he was refused leftover Ramadan meals).

Despite missing the deadline, Mr. Oliver was informed several times that he could speak with Mr. Islam to resolve his Ramadan observation issues. (ECF No. 44-2 at 8). After his mother called the institution, Ms. Potter issued him a pass to see Mr. Islam on June 1, 2018. (ECF No. 44-2 at 9). Ms. Potter also informed Mr. Islam that Mr. Oliver was a Muslim who sought to participate in Ramadan and that he had been issued a pass. (ECF No. 44-2 at 10). Mr. Islam attests that Mr. Oliver did not see him on June 1, 2018. (ECF No. 44-1 ¶ 9). Where an incarcerated person may seek a religious exemption or accommodation from facially reasonable prison policies and fails to pursue such exemption or accommodation, this Court has found that his free exercise rights have not been infringed. *See Treesh v. Bobb-Itt*, No. 2:10-cv-211, 2011 WL 3837099, at *5–6 (S.D. Ohio Aug. 29, 2011) (finding no violation of constitutional right where Plaintiff who did not seek permission to wear Native American religious headgear was penalized). While the prison policy placed a deadline to participate in Ramadan, the evidence here indicates that Mr. Islam was not inflexible with accommodating Mr. Oliver. In light of the declarations submitted by Mr. Islam, Mr. Oliver cannot rely solely on allegations in his complaint and objection to create a factual issue about the matters which are set forth in those declarations. To withstand a summary judgment motion, he would need to identify parts in the record that demonstrate that the relevant facts are disputed. Mr. Oliver has not demonstrated that material facts are disputed. While this Court does not doubt Mr. Oliver's sincerity that his inability to participate in Ramadan was more than an inconvenience, the evidence before this Court does not present a genuine issue of material fact sufficient to withstand summary judgment.

Based on the Magistrate Judge's analysis and an independent review of the facts and law, this Court concludes that Defendant Islam is entitled to summary judgment because Plaintiff Oliver has failed to establish that a genuine issue of material fact exists as to whether Mr. Islam's actions substantially burdened Mr. Oliver's First Amendment rights. For these reasons, Defendant's Motion for Summary Judgment is **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, this Court **ADOPTS** the Magistrate Judge's November 23, 2020 Report and Recommendation. (ECF No. 45). Plaintiff's Objections to the Magistrate Judge's report and Recommendation are **OVERRULED**. Defendant Islam's Motion for Summary Judgment (ECF No. 44) is **GRANTED.** This case is DISMISSED.

IT IS SO ORDERED.

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

DATE:  April 5, 2021